UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

In re:

SEA ISLAND COMPANY, et al.,

Debtors.

_____

DENNIE MCCRARY,

Appellant,

v.                            2:12-cv-129
                              Bankruptcy Appeal

ROBERT BARNETT, as the Liquidation
Trustee Under the Sea Island Liquidation
Trust,

Appellee.

## ORDER

## I. INTRODUCTION

This contested matter stems from the bankruptcy of Sea Island Company ("Debtor"), a luxury resort on Georgia's coast. Dennie McCrary—an unsecured creditor of Sea Island—objected to a motion by the Liquidation Trustee ("Trustee") for an extension of the claims objection deadline and for related relief. The bankruptcy court overruled McCrary's objection and granted the motion and related relief, prompting this appeal. The issue before this Court is whether the related relief constitutes modification of the restructuring plan in violation of 11 U.S.C. § 1127(b). The bankruptcy court held it did not. This Court agrees.

## II. BACKGROUND

On August 10, 2010, the Debtor filed a petition for Chapter 11 bankruptcy relief. *See* Bankr. ECF No. 1.[1] Although one of the largest bankruptcy filings in this District's history, *see* Hr'g Tr. at 39, Oct. 30, 2012, the bankruptcy court quickly approved the Debtor's Chapter 11 reorganization plan ("Plan"). *See* Bankr. ECF No. 372 (confirming Plan on November 8, 2012).

Dennie McCrary ("McCrary") "is one such creditor" who approved the Plan. *See* ECF No. 5 at 8. McCrary first began working for the Debtor in 1975 as vice president of finance. *See* Bankr. ECF No. 953 at 33-34. From 1998 to 2003 McCrary served as the Debtor's president. *Id.* at 34. He also served on the Debtor's board of directors until 2009. *Id.* As a result of his longtime employment, McCrary is the single largest unsecured creditor, with almost $30 million in claims. *See* ECF No. 14-1 at 4-5.

### A. The Plan

The Plan contemplates the sale of most of the Debtor's assets, with the remainder placed in a liquidation trust. *See* ECF No. 5-2 at 37, 45. The Trustee then must sell those assets and distribute the proceeds to trust beneficiaries (creditors of the Debtor). *Id.* at 37. One asset transferred is the Accepting Unsecured Creditor's Fund ("AUCF"). ECF No. 5 at 8. Funded by the Debtor's senior secured lenders to provide a guaranteed return to unsecured creditors who voted to

_____

[1] Citation to the bankruptcy court's docket will follow this format. Citation to the docket on appeal will be to "ECF No." Pagination in both citation forms is to the ECF page number.

accept the Plan, the AUCF originally totaled $6.3 million. *Id.*

The Plan divides all unsecured claims into three classes: Classes 4, 5, and 6. Class 4, of which McCrary is a member, "consists of all holders of Accepting Unsecured Claims against the Debtor[]." *Id.* For such claims, the Plan provides that:

> Each Holder of an Allowed[2] Class 4 Accepting Unsecured Claim shall receive its Pro Rata share of the [AUCF] on or as soon as practicable after the later of (i) the Effective Date,[3] (ii) the date that such Accepting Unsecured Claim becomes Allowed, and (iii) a date agreed to by the Liquidation Trustee and the Holder of such Class 4 Accepting Unsecured Claim.

ECF No. 5-2 at 33-34.

"Class 5 consists of all Other General Unsecured Claims against the Debtor[]." ECF No. 5-2 at 34. The Plan treatment of Class 5 claims states:

> On either (i) the first Distribution Date[4] after the Claims Objection Deadline[5] has occurred, if no objection to such Claim has been timely filed, or (ii) the first Distribution Date after the date on which any objection to such Other General Unsecured Claim is settled, withdrawn, or overruled pursuant to a Final Order of the Bankruptcy Court, each Holder of an Allowed Class 5 . . . Claim shall receive its Pro Rata Distribution.

*Id.* Class 6 claims—"generally small unsecured claims"—are treated similarly. *See id.*; ECF No. 5 at 9.

## B. The Liquidation Trustee's Extension Motions

Approximately one month before the first Claims Objection Deadline ("objection deadline"), the Trustee filed his first motion for an extension of that deadline and the

---

[2] The Plan defines "Allowed" as meaning:
> with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules . . . and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date . . . provided that at the time of the Effective Date the Debtors have not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline.

ECF No. 5-2 at 13. The term "objection" is defined as "any objection, application, motion, complaint or any other legal proceeding seeking . . . to Disallow, determine, liquidate, [or] classify . . . any Claim." *Id.* at 21.

[3] The Plan's Effective Date was December 16, 2010. *See* Bankr. ECF No. 444 at 1.

[4] The Plan defines "Distribution Date" as "(i) the Initial Distribution Date, and (ii) the first Business Day after the end of the months June and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date." ECF No. 5-2 at 17.
The Initial Distribution Date is defined as "the Effective Date or as soon as reasonably practical thereafter; provided, however, that in no event shall the Initial Distribution Date be more than sixty (60) days after the Effective Date *unless otherwise ordered by the Bankruptcy Court.*" *Id.* at 20 (underlining in original, italicization added).

[5] "'Claims Objection Deadline' means the latest of: (a) 120 days after the Effective Date; or (b) *such other date as may be fixed by the Bankruptcy Court . . . .*" *Id.* at 15 (emphasis added).

2

Initial Distribution Date. *See* Bankr. ECF No. 551 at 1-2. The motion also sought relief related to the deadline extensions. *Id.* at 8-9. The bankruptcy court granted the motion and extended the objection deadline from April 14, 2011 to August 12, 2011. Bankr. ECF No. 574.

The Trustee filed a second such motion less than a month before the new objection deadline. *See* Bankr. ECF No. 621. Once again, the Trustee requested extension of the two deadlines and related relief. *Id.* And once again, the bankruptcy court obliged, extending the objection deadline to December 12, 2011. Bankr. ECF No. 622.

Two weeks prior to the December objection deadline, the Trustee filed his third motion for an extension. Bankr. ECF No. 705. As in the previous motions, the Trustee requested extensions of the objection deadline and the Initial Distribution Date, and related relief. The bankruptcy court granted this third request the next day, extending the objection deadline to April 23, 2012. *See* Bankr. ECF No. 710.

Finally, and in keeping with the established pattern, the Trustee filed a fourth request[6] two weeks prior to the April 23 objection deadline that sought to extend both deadlines and sought the same related relief as the previous requests. *See* Bankr. ECF No. 835. The bankruptcy court granted the extensions and relief, setting a new

objection deadline of August 27, 2012. Bankr. ECF No. 844 ("fourth order").

### 1. The Related Relief

In each of the four motions for extension of the objection deadline, the Trustee requested the bankruptcy court grant "related relief." *See, e.g.,* Bankr. ECF No. 835 at 12-13. And each time, the bankruptcy court granted the relief. The relief requested remained substantively the same from extension to extension, with the new deadlines being the only meaningful variation. *Compare id., with* Bankr. ECF No. 705 at 11-12, *and* Bankr. ECF No. 621 at 9-10. Because McCrary appealed the bankruptcy court's denial of his objection to the fourth extension order, however, this Court relates only the relief as stated in the fourth order. There, the bankruptcy court:

> [1.] FURTHER ORDERED that, once an objection, adversary proceeding, or other pleading is filed as to any Claim, the Claims Objection Deadline shall no longer apply to such Claim . . . and it is

> [2.] FURTHER ORDERED that, all provisions of the Plan or the Trust Agreement notwithstanding, for Claims as to which the Liquidation Trustee has not filed an objection . . . on or before the Claims Objection Deadline, the Initial Distribution Date (as defined in the Plan) shall be, and the Liquidation Trustee shall not be required to make a Distribution (as defined in the Plan) until, the next Distribution Date (as defined in the Plan) occurring more than thirty

---

[6] The Trustee also sought a fifth extension. *See* Bankr. ECF No. 981. The bankruptcy court extended the objection deadline to December 20, 2012, but did not grant the related relief, as it held this appeal divested it of jurisdiction to hear that aspect of the Trustee's request. *See* Bankr. ECF No. 994 at 19-20.

(30) days after the Claims Objection Deadline; and it is

[3.] FURTHER ORDERED that, all provisions of the Plan or Trust Agreement notwithstanding, the Liquidation Trustee shall not be required to make a distribution on account of any Claim, to which the Liquidation Trustee has filed an objection . . . unless and until the next Distribution Date occurring more than thirty (30) days after the entry of a Final Order (as defined in the Plan) allowing part or all of the Claim; and it is

[4.] FURTHER ORDERED that, other than as provided below, all provisions of the Plan or the Trust Agreement notwithstanding, all subsequent Distributions shall be made on the Distribution Dates; and it is

[5.] FURTHER ORDERED that, the occurrence of the Initial Distribution Date or a Distribution Date notwithstanding, the Liquidation Trustee shall not be required to make a Distribution unless the Liquidation Trustee in his judgment believes that the amount of the Distribution justifies making the Distribution.

Bankr. ECF No. 835 at 12-13.

### C. The Appealed Order

McCrary objected to the fourth motion's request for an extension of the objection deadline and to the related relief. *See* ECF No. 5 at 12. After a hearing, the bankruptcy court overruled the objection. Bankr. ECF

No. 883 ("Appealed Order"). The court held that (1) cause existed to extend the objection deadline; and (2) the related relief did not "constitute[] an improper modification of the Debtor's confirmed plan." *Id.* at 3. In justifying the grant of relief, the court reasoned first that the relief merely afforded the Trustee more time to do his job (determining whether to allow claims), and second that "each of the three prior orders entered extending the claims objection deadline contain[ed] similar language." *Id.* at 3. McCrary then appealed only the bankruptcy court's holding that the related relief did not modify the Plan's treatment of Class 4 claims. *See* ECF No. 5 at 18.

### III. STANDARDS OF REVIEW

The parties hotly contest the appropriate standard of review. McCrary contends this Court should conduct a *de novo* review because the bankruptcy court made a legal conclusion when it decided the related relief does not modify the Plan. *See* ECF Nos. 5 at 6; 14 at 10-11. The Trustee, on the other hand, asserts that review should be only for abuse of discretion because the bankruptcy court's decision interpreted the Plan and thus its own order. *See* ECF No. 12 at 5-9.

Neither party disputes that district courts review a bankruptcy court's legal conclusions *de novo*. *See In re Fin. Federated Title & Trust, Inc.*, 309 F.3d 1325, 1328-29 (11th Cir. 2002). Nor does either party dispute that review of a bankruptcy court's interpretation of its own order is for abuse of discretion. *See In re Optical Techs., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) ("*Optical II*"); *see also In*

4

*re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166, 1168 (11th Cir. 1985) (stating a reluctance "to disturb a bankruptcy court's judgment interpreting its own earlier order.").

The parties do, however, dispute two issues: first, whether the bankruptcy court interpreted the Plan or made a legal conclusion when it held the related relief did not improperly modify the Plan; and second, whether a bankruptcy court's interpretation of a confirmed plan is subject to abuse of discretion review. Because the first issue is not an either/or proposition—i.e., the bankruptcy court reached legal conclusions *and* interpreted the Plan—the Court must address both issues.

The Trustee argues that (1) the bankruptcy court's holding that the related relief did not improperly modify the Plan constituted an interpretation of the Plan; and (2) confirmed plans become orders and *Optical II* and *Ranch House*'s deference applies to their interpretation. *See* ECF No. 12 at 5-9. McCrary contends that the bankruptcy court made a legal conclusion this Court should review *de novo*. ECF No. 14 at 10-11. But even if the bankruptcy court interpreted the Plan, says McCrary, "the Eleventh Circuit has not adopted the principle espoused in some other circuits that appellate review of a bankruptcy court's interpretation of a confirmed plan . . . is subject to the 'abuse of discretion' standard." *Id.* at 10.

Turning first to whether the bankruptcy court interpreted the Plan or reached a legal conclusion: the Court finds the bankruptcy court did both.

11 U.S.C. § 1127(b) "is the sole means of modification of a plan of reorganization after it has been confirmed." *In re Winn-Dixie Stores, Inc.*, 377 B.R. 322, 335 (M.D. Fla. 2007), *aff'd sub nom, In re Winn-Dixie Stores, Inc.*, 286 F. App'x 619 (11th Cir. 2008). Because the Plan here had been confirmed at the time of the Appealed Order, the bankruptcy court's holding that the related relief did not improperly modify the Plan necessarily (but implicitly) relied on or interpreted § 1127(b). The holding therefore is a legal conclusion subject to *de novo* review. *Cf. Optical II*, 425 F.3d at 1303 (finding the bankruptcy court's conclusion that expired leases could not be modified by the plan to be a legal conclusion subject to *de novo* review).

To reach that conclusion, however, the bankruptcy court also interpreted the Plan. It read the related relief as impacting the time tables for determining whether to allow claims the Plan set forth. *See* Bankr. ECF No. 883 at 3 (explaining that the related relief affords the Trustee time to "[d]etermin[e] whether the class 4 creditors hold allowed claims."). In doing so, the bankruptcy court had to consider how the Plan provisions setting forth those time tables operated, as well as the effect of the related relief on treatment of Class 4 creditors. *See id.* Evaluation of those judgments thus requires this Court to determine the appropriate standard of review for interpretations of confirmed plans.

McCrary is correct that the Eleventh Circuit has not stated unequivocally that bankruptcy court interpretation of confirmed plans is entitled to deference. *Ranch House* and *Optical II*, however, do suggest abuse of

discretion is the appropriate standard for review.

In *Ranch House*, the bankruptcy court's confirmation order made "specific reference to the initial plan as amended by the Amended Plan," but only contained the amended plan in its appendix. 773 F.2d at 1168. In a subsequent dispute over a lease, the bankruptcy court had to determine whether the confirmation order included only the amended plan—which omitted a clause, included in the initial plan, that rejected such leases—or whether it also included the initial plan. *Id.* The bankruptcy court "concluded that the confirmation order rejected the lease" and the Eleventh Circuit, despite some doubt over the correctness of that interpretation, affirmed because "[t]he bankruptcy judge who has presided over a case from its inception is in the best position to clarify . . . inconsistencies in the court's rulings." *Id.*

Although the court's deference could be read to apply only to the bankruptcy court's determination that the confirmation order included the initial plan[7]—not to its interpretation of the initial plan to include rejection of executory contracts—the holding deferred to the "conclu[sion] that the confirmation order rejected the lease." *Id.* The court therefore at least implicitly gave deference to the bankruptcy court's interpretation of the initial plan.

*Optical II* also hints that interpretation of confirmed plans is subject to abuse of discretion review. The bankruptcy court

there held that the plan did not modify certain leases that had expired prior to confirmation. *See Optical II*, 425 F.3d at 1303. Although the Eleventh Circuit found that holding to be a legal conclusion and reviewed it de novo, the court distinguished between such conclusions and those "interpreting the Plan or the confirmation order." *Id.* The latter, stated the court, are subject to abuse of discretion review. *Id.* at 1300 (citing *In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 744 (8th Cir. 2003) (holding that a confirmed plan is an order of the bankruptcy court and thus that "[i]n reviewing [the] interpretation of a confirmed plan . . . the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order.") (internal quotations omitted)).

McCrary cites *In re Celotex Corp.*, as evidence that the Eleventh Circuit reviews plan terms *de novo*. See ECF No. 14 at 11 (citing 487 F.3d 1320, 1328 (11th Cir. 2007) ("[W]e must independently interpret the terms of the Plan Documents . . . .")). But McCrary misconstrues the word "independently" to mean "*de novo*." The court in *In re Celotex* used independently to mean it would determine the Trustee's powers "without deferring to either party's interpretation [of the Plan Documents]." *Id.* If independently meant *de novo*, the statement that appellate courts "examine[] independently the bankruptcy court's factual . . . determinations," *id.* at 1327, makes little sense in light of the court's "review [of] a bankruptcy court's factual findings for clear error." *Id.* at 1328. Beyond the out of context cite McCrary leans on, *In re Celotex*

---

[7] "We find no error . . . in the bankruptcy court's interpretation of the confirmation order as embracing the initial plan." *Ranch House*, 773 F.2d at 1168.

6

offers little help in determining the proper standard of review for bankruptcy court interpretation of confirmed plans.

Courts in at least one circuit have held to the contrary, reasoning that interpreting plans is like contractual or statutory interpretation, which is reviewed *de novo*. *See, e.g.*, *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000) (citing *Bellefonte Reins. Co. Aetna Cas. and Sur. Co.*, 903 F.2d 910, 912 (2d Cir. 1990) ("The proper standard for appellate review of a pure textual construction . . . is de novo."). But that reasoning appears nowhere in the Eleventh Circuit's case law. Given the strong signals favoring abuse of discretion from *Optical II* and *Ranch House*, and the absence of binding authority to the contrary, the Court concludes that any interpretations of the Plan by the bankruptcy court are entitled to review for abuse of discretion. And as explained *supra*, the holding that the related relief does not improperly modify the Plan is a legal conclusion reviewed *de novo*. With those review lenses established, the Court turns now to its analysis.

## IV. DISCUSSION

The crux of McCrary's appeal is whether the related relief modifies the Plan in violation of § 1127(b). *See* ECF No. 5 at 6. Before the Court can reach that question, however, it must consider two related arguments put forth by the Trustee regarding previous orders of the bankruptcy court, and an argument that expiration of the fourth order's objection deadline makes this appeal moot.

## A. Impact of Previous Bankruptcy Court Orders

First, the Trustee contends that this appeal is an improper collateral attack on previous, now unappealable, orders of the bankruptcy court granting relief similar to the related relief challenged here. *See* ECF No. 12 at 13. Second, the Trustee argues the relief in previous orders contains no temporal limitation. *Id.* at 14-15; ECF Nos. 16-2 at 3; 22 at 7-8. The Trustee contends that McCrary thus lacks standing because the relief in those orders continues to operate and cannot be redressed. *See, e.g.*, ECF No. 16-2 at 4.[8] Turning first to the Trustee's collateral attack argument.

### 1. Appeal as Improper Collateral Attack

In his initial brief, the Trustee briefly argues that the related relief in previous orders and the related relief in the fourth extension order contain similar language and this case thus constitutes a collateral attack on those prior orders. *See* ECF No. 12 at 13.

A collateral attack is "[a]n attack on a judgment in a proceeding *other than a direct appeal*." *Wall v. Kholi*, 131 S. Ct. 1278, 1284 (2011) (quoting BLACK'S LAW DICTIONARY 298 (9th ed. 2009)); *see also*

---

[8] The Trustee also argues in a supplemental brief that McCrary failed to raise the temporariness of relief argument below and thus waived the argument. *See* ECF No. 22 at 7. But the Trustee himself failed to assert the waiver argument until what effectively is his second sur-reply brief. He therefore waived the waiver argument. *See Liese v. Indian River Cnty. Hosp. Dist.*, No. 10-15968, ---F.3d ---, 2012 WL 5477523, at *12 n.10 (11th Cir. Nov. 13, 2012) (holding that mention of an argument for the first time in a reply brief "constitutes a waiver of th[e] argument.").

*State Auto Mut. Ins. Co. v. Relocation Corp. Housing Servs., Inc.*, 287 Ga. App. 575, 577 ("A 'collateral attack' . . . [is] an attempt to avoid, defeat or evade a judicial decree . . . in some incidental proceeding . . . for the express purpose of attacking the prior judgment.").

McCrary simply is not attacking the prior orders, much less in a collateral proceeding. He attacks the fourth order—and the fourth order alone—extending the objection deadline and granting related relief. *See* ECF No. 5 at 5-6. And he does not attack the fourth order in a proceeding separate from the one in which the bankruptcy court issued the order. Rather, McCrary objected to the fourth order within the Debtor's bankruptcy proceeding and now directly appeals the bankruptcy court's denial of his objection. *See Kholi*, 131 S. Ct. at 1284. His appeal therefore is not collateral and is not an attack on a prior judgment. *See Relocation Corp.*, 287 Ga. App. at 577.

### 2. Permanency of the Related Relief

The Trustee also argues that McCrary cannot demonstrate the redressability required for standing because the related relief in prior orders—whose time for appeal has passed—is permanent and not limited by the associated objection deadlines. *See* ECF No. 22 at 6. The Trustee asserts that (1) "the plain and unambiguous language of the related relief is permanent and not temporary," *id.* at 7 (citations and internal quotations omitted); and (2) the bankruptcy court already found the relief in prior orders

permanent and that judgment is entitled to deference.[9] *Id.* at 8.

McCrary claims that the related relief in each prior order is time limited by the claims objection deadline  as reset by each prior order. ECF No. 14 at 18. McCrary also points to the Trustee's now five requests for deadline extensions and related relief, arguing that such repeated requests makes no sense if the relief granted in the first extension order was permanent beyond the new deadline. *Id.* at 19.

The Trustee is correct that the related relief paragraphs themselves contain no explicit statement that the relief's effects expire when the associated objection deadline is reached. None of the five paragraphs of challenged relief contains a date certain. *See* Bankr. ECF No. 835 at 12-13. Nor is there an explicit statement in the fourth order that the relief is effective only for a limited period of time. *Id.* But to read the prior orders so narrowly denudes the relief of context and is a mistake.

The fourth order granting an objection extension granted not only an extension but also *related* relief. *See* ECF No. 5 at 31. Although the order does not define the term related, it is plain the word references the relationship between the objection deadline and the relief. The language of the relief supports that conclusion. Paragraphs one

---

[9] The Trustee also vaguely asserts, without elaboration, that "logic dictates that the 'related relief' [is] permanent," and that McCrary concedes as much. ECF No. 22 at 8. As the Trustee failed to elaborate on this argument, and as the Trustee raised it for the first time in his supplemental brief, the Court declines to address the matter except to the extent it is incorporated in the Trustee's other permanency arguments.

8

and two are explicitly keyed to the objection deadline. *See* Bankr. ECF No. 835 at 12. And as the bankruptcy court itself noted in its fifth order extending the objection deadline ("fifth order"), paragraphs three, four, and five, along with one and two, "alter the effect that the deadline has on claims and creditors." ECF No. 14-1 at 23.

The bankruptcy court also astutely noted in its fifth extension order that each of the four previous extension orders "resolved a specific request to extend the claims objection deadline, and each one granted *distinct* relief by creating a new deadline *and* by granting additional relief." *Id.* at 16 (emphasis added). Most importantly, the bankruptcy court held that "[r]egardless of the fact that the additional relief granted in the Second, Third, and Fourth Orders was very similar to the additional relief granted in the First, *the three subsequent orders were not mere amendments to the First. . . .* [E]ach ended the controversy present at the time it was entered." *Id.* (emphasis added).

The bankruptcy court did not abuse its discretion in reaching those conclusions and so this Court must agree. *See Optical II*, 425 F.3d at 1300 (requiring deference to a bankruptcy court's interpretation of its own order). Granting essentially the same relief four times makes little sense unless the relief had in effect an expiration date keyed to the objection deadline it was related to. Otherwise, the bankruptcy court engaged in meaningless grants of superfluous relief. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002) (construing a statutory authorization of injunctive and "other appropriate equitable relief" to preclude legal relief so as not to render the limitation to injunctive relief meaningless).

The Trustee also argues this Court should defer to another holding of the bankruptcy court in its fifth order. *See* ECF Nos. 22 at 8; 14-1 at 22-23. In that order, the bankruptcy court held that this appeal divested it of jurisdiction to grant the related relief a fifth time. The bankruptcy court also noted that divestiture holding "does not negate the effects of the . . . related relief provisions in [prior orders]," and that "the parties must abide by those orders." ECF 14-1 at 23-24 (internal quotations omitted).

The Trustee asserts the bankruptcy court thus interpreted its own order to say that the related relief in prior orders is not linked to the objection deadline. See ECF No. 22 at 9. Not so. The bankruptcy court merely stated the obvious—that the rule of divestiture does not operate to nullify the effects of prior, unappealed orders. To infer that the related relief in prior orders continues to have prospective effects untethered from the associated objection deadlines is to read in words the bankruptcy court has not uttered.

The Court finds that the related relief is tied to the objection deadline. McCrary's requested relief therefore would redress the injury caused by the fourth order—and McCrary therefore has standing—because the relief in the three prior orders ceased to prospectively operate on claims and objections filed after the associated objection deadlines passed.

## B. Mootness

Finally, the Trustee argues McCrary's appeal is moot because the objection

deadline extension in the fourth order ended August 27, 2012. *See* ECF Nos. 12 at 15; 16-2 at 5. Although true that the related relief effectively expired with the passage of the fourth objection deadline, the capable-of-repetition-yet-evading-review exception to mootness applies. *See Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1256 (11th Cir. 2001) (holding that "where '1) the challenged action is too short in duration to be fully litigated prior to its cessation or termination, and 2) there is a reasonable expectation that the same complaining party will be subject to the same action again,'" an action is not moot). As this case demonstrates, the duration of each extension of the objection deadline and corresponding grant of related relief simply does not last long enough for the judicial process to play out before the deadline and relief expire. And as the Trustee's fifth request for relief and an objection deadline extension demonstrate, McCrary has a very reasonable expectation of being subject to the relief again in the future. This appeal is therefore not moot.

With all issues surrounding prior bankruptcy court orders now addressed, the Court turns to the substantive core of McCrary's appeal—whether the related relief constitutes a modification of the Plan that violates 11 U.S.C. § 1127.

## C. Modification under § 1127(b)

McCrary argues the related relief "impermissibly modifies the Confirmed Plan" in three main ways. ECF No. 5 at 18. First, the related relief "dilute[s] the substance of the Claims Objection Deadline . . . by engrafting onto [the objection]

process the Liquidation Trustee's own rules of operation;" second, it modifies treatment of Class 4 claims by delaying distributions until the initial distribution date and subsequent distribution dates; and third, it gives the Trustee discretion not to make distributions when the Trustee "in his judgment believes" the amount does not justify distribution. *See* ECF No. 5 at 18; Bankr. ECF No. 834 at 13.

The Trustee prefers to characterize the related relief as interpretations of the Plan rather than modifications.[10] ECF No. 12 at 16. The related relief, argues the Trustee, therefore does not violate § 1127(b). Before addressing the merits of these arguments, however, the Court first explicates the mechanics of § 1127(b), then the law surrounding what constitutes a modification.

### 1. 11 U.S.C. § 1127(b)

As noted above, § 1127(b) "is the sole means of modification of a plan . . . after it has been confirmed."[11] *In re Winn Dixie Stores, Inc.*, 377 B.R. 322, 335 (M.D. Fla. 2007), *aff'd sub nom, In re Winn-Dixie Stores, Inc.*, 286 F. App'x 619 (11th Cir. 2008). Neither party disputes the confirmed status of the Plan here. Section 1127(b) therefore represents the only avenue for modification of the Plan.

Section 1127(b) constrains post-confirmation modification in two ways: first, modifications may only be made by a "proponent of a plan or the reorganized

_____

[10] As discussed *supra* at 4, this characterization also supports the Trustee's assertion that this Court's review should only be for abuse of discretion.
[11] 11 U.S.C. 1127(a) governs who may modify a plan before confirmation.

debtor[;]" and second, modifications after confirmation may only be made before substantial consummation of the plan.

The Trustee does not dispute that substantial consummation has occurred.[12] Nor is the Trustee a proponent of the Plan.[13] Accordingly, § 1127(b) prohibits the related relief if the relief constitutes a modification of the Plan.

### 2. What Constitutes Modification

The Bankruptcy Code does not define the term "modification." Instead, "courts determine what constitutes a 'modification' on a case-by-case basis." *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011) (citing 7 COLLIER ON BANKRUPTCY ¶ 1127.03 (16th ed. rev. 2011)). Some find modifications when changes to a plan alter "the legal relationships among the debtor and its creditors." *In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 816 (Bankr. S.D.N.Y. 1997). Others see modifications only where provisions of a plan are violated or removed. *See Hawkins v. Chapter 11 Trustee*, No.

6:07-cv-0766 (LEK), 2009 WL 701115, at *3 (N.D.N.Y. Mar. 13, 2009) (reversing as an impermissible modification the bankruptcy court's approval of a lump sum payment instead of conveyance of a percentage of the bankruptcy estate as provided by the confirmed plan); *see also In re U.S. Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002) (finding substitution of arbitration of claims in place of litigation to be a modification). Still others look instead to whether the change is major or minor, and whether it is one of substance or procedure. *See In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 747-48 (2d Cir. 1992) (finding that "significant changes of substance" as opposed to "minor changes of procedure" constitute modifications).

Without much elaboration, the bankruptcy court here found that the related relief did not improperly modify the Plan.[14] *See* Bankr. ECF No. 883 at 3. As a legal conclusion, this Court reviews that holding *de novo. See In re Fin. Federated Title & Trust, Inc.*, 309 F.3d 1325, 1328-29 (11th Cir. 2002). That review proceeds through each paragraph of the related relief to determine whether any or all are modifications.

---

[12] 11 U.S.C. § 1101(2) defines substantial consummation as: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or successor to the debtor . . . of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."

[13] McCrary briefly argues—and the Trustee does not dispute—that the Trustee is not a plan proponent (the Trustee is quite obviously not the Debtor). *See* ECF No. 5 at 21. The Plan's language appears to support that conclusion. *See* ECF No. 5-2 at 57 ("The *Debtors* may . . . modify the Plan in accordance with section 1127 of the Bankruptcy Cody. . . . After the Confirmation Date . . . and in accordance with the provisions of section 1127(b) of the Bankruptcy Code . . . the *Debtors* may . . . remedy any defect or omission . . . in the Plan.") (emphasis added). The Court therefore proceeds as if the Trustee is not a Plan proponent.

[14] McCrary's argues that the bankruptcy court's use of the phrase "improper modification" constitutes an admission that the relief modified the Plan for purposes of § 1127. *See* ECF No. 5 at 19. The Court finds this construction to possess little merit. In fact, an equally plausible interpretation of the phrase "improper modification" could mean just the opposite—that the related relief did *not* modify the Plan.

3.  *Application of § 1127(b) to the Related Relief*

Paragraph 1 of the related relief states that once a claim objection is filed, the objection deadline no longer applies as to that claim.  Bankr. ECF No. 835 at 12. McCrary believes this relief "gobbles up the rule of having" an objection deadline. ECF No. 5 at 24.  He claims paragraph 1 allows the Trustee effectively to pause the process of determining which claims are allowed by filing superficial objections.  *Id.* That pause then modifies the treatment of Class 4 claims by improperly delaying allowance and thus payment. *Id.* The Court disagrees.

By exempting objected to claims from the objection deadline, paragraph 1 effects no real change in the treatment of Class 4 claims, including McCrary's.  The bankruptcy court, under the terms of the Plan, has the authority to change the date of the objection deadline. *See* ECF 5-2 at 15. Even without paragraph 1, should the Trustee file a "superficial" objection to a claim and then later, after the deadline passes, try to amend or further object, the bankruptcy court could fix a new objection deadline to allow for the new objection. Paragraph 1, rather than modify or alter anything about the Plan, more appropriately can be characterized as the bankruptcy court exercising its Plan-granted authority to set the objection deadline date in order to streamline the objection and allowance process.

Quite unlike cases where courts have found modifications, paragraph 1 effects no change in the legal relationship between the

Trustee and McCrary. *See In re Ionosphere Clubs*, 208 B.R. at 816.  And unlike the shift from litigation to arbitration in *In re U.S. Brass*, paragraph 1 does not fundamentally alter the claims resolution process the Plan provides.  If anything, paragraph 1 constitutes a minor change in procedure, not a major change in substance. *See In re Joint E. & S. Dist. Asbestos Litigation*, 982 F.2d at 747-48.  Paragraph 1 therefore is not a modification and therefore does not violate § 1127(b).

Paragraph 2 provides distribution date parameters for claims to which the Trustee has not objected. *See* Bankr. ECF No. 835 at 12.  But the Trustee *has* objected to McCrary's claim. *See* Bankr. ECF No. 947 (objecting to claim on July 11, 2012). Although when McCrary initiated this appeal the Trustee had filed no objection to his claim—and thus Paragraph 2 applied— Paragraph 2 does not now apply to McCrary's claim.  His objection to this particular portion of the related relief is moot. *See BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (quoting *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003)).

Paragraph 3 of the related relief provides that for claims the Trustee objects to, distributions need not be made until the "next Distribution Date occurring more than thirty (30) days after the entry of a Final Order . . . allowing part or all of the claim." Bankr. ECF No. 835 at 12.  McCrary asserts that application of distribution dates to Class 4 claims alters the treatment of those claims

as provided by the Plan and thus is a modification.[15] *See* ECF No. 5 at 26.

Under an appropriate set of facts that may be the case. The Plan requires that distributions on allowed Class 4 claims be made "as soon as practicable after . . . the date that such . . . Claim becomes Allowed." ECF No. 5-2 at 33. And Section 5.03 of the Plan also calls for distribution on claims that become allowed after objections have been filed to occur "as soon as practicable" after allowance. *Id.* at 36. When paragraph 3 applies, however, the timing of distribution for the claim shifts, to then occur on the distribution date[16] at least thirty days after the claim becomes allowed. Bankr. ECF No. 835 at 12. To the extent that date of distribution falls outside "as soon as practicable," paragraph 3 violates the Plan's term for treatment of class 4 claims (and other classes of claims that had objections filed and later became allowed) and may constitute a modification that violates § 1127(b).

But this Court cannot say as a matter of law, or on the basis of the facts now before the Court, that paragraph 3 will cause distribution on McCrary's claim to be made later than "as soon as practicable." The meaning of that phrase varies based on all reasonable facts and circumstances. *See, e.g., Arrowood Indem. Co. v. Macon Cnty. Greyhound Park, Inc.,* 757 F. Supp. 2d 1219, 1224 (M.D. Ala. 2010), *aff'd,* 447 Fed. App'x 947 (11th Cir. 2011) (finding "as soon as practicable" in context of notice required by insurance policy to mean within a reasonable time in light of facts and circumstances); *Ill. Union Ins. Co. v. Sierra Contracting Corp.,* 744 F. Supp. 2d 1349, 1352 (N.D. Ga. 2010) (same). And McCrary presents no facts indicating that paragraph 3 has resulted in a distribution, on his claim[17] or any other, not being made "as soon as practicable." Accordingly, this Court finds that paragraph 3 does not per se constitute a modification of the Plan in violation of § 1127(b).

Paragraphs 4 and 5 are susceptible to a similar analysis as paragraph 3. Paragraph 4 simply states that all distributions "shall be made on the Distribution Dates," while paragraph 5 says the "Trustee shall not be required to make a Distribution unless the . . . Trustee in his judgment believes that the amount of the Distribution justifies making the Distribution." Bankr. ECF No. 835 at 13.

---

[15] The Trustee makes a brief argument that McCrary "agreed" to the altered distribution timing the related relief brings by not objecting to the first three orders granting the relief. *See* ECF No. 12 at 22-23. Perhaps McCrary "agreed" to the first three orders. But as discussed *supra* at 8-9, the relief in those orders was not permanent and McCrary clearly objected to the relief in the fourth order.
[16] The Plan defines "distribution date" as the initial distribution date, and "the first Business Day after the end of the months June and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date." ECF No. 5-2 at 17. But the initial distribution date itself can be set effectively at any reasonable time by the Bankruptcy Court. *Id.* at 20. So, under paragraph 3, the distribution date for an allowed Class 4 claim might not occur for some time after it becomes allowed, depending on (1) what the bankruptcy court sets the initial distribution as; and (2) when during a calendar year the claim becomes allowed.

[17] Because the Trustee filed an objection that remains unresolved, McCrary's claim is not yet allowed and neither the Plan nor paragraph 3's time table for distribution have been triggered. Put simply, no facts currently exist for McCrary to proffer that show paragraph 3 impermissibly modified the Plan's treatment of his claim.

13

As with paragraph 3, both paragraphs 4 and 5 may, under the right set of facts, modify treatment of class 4 claims and therefore may constitute an impermissible modification of the Plan. The malleability of the phrase "as soon as practicable," however, once again prevents the Court, absent factual context, to decide as a matter of law that paragraphs 4 and 5 modify treatment of class 4 claims. The Trustee, for example, could exercise the discretion granted by paragraph 5 in a manner that is consistent, or inconsistent, with the Plan's requirement that allowed class 4 claims receive distribution "as soon as practicable." If he did so consistently, paragraph 5 would not modify the Plan. The exercise of judgment under paragraph 5 inconsistent with the treatment of class 4 claims, on the other hand, likely would modify the Plan.

But McCrary makes no showing of facts and circumstances to indicate that a distribution on his claims has been made later than the Plan allows.[18]   Even if McCrary were to make such a showing, he would still have to convince a court that a tardy distribution constitutes a modification that violates § 1127(b).   This Court therefore, as with paragraph 3, finds that paragraphs 4 and 5 do not per se constitute impermissible modifications of the Plan.

## V. CONCLUSION

The Court finds that the related relief does not constitute a modification of the Plan in violation of 11 U.S.C. § 1127(b).

Accordingly, the Court *AFFIRMS* the judgment of the bankruptcy court.

This 2 day of January 2013.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[18] It bears repeating that McCrary's claim currently is not eligible for a distribution—under the Plan alone or as supplemented by the related relief—because it is not yet allowed.

14